UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
|     Plaintiff : | |
| : | CIVIL ACTION NO. |
| V. : | 3-06-CV-1724 (JCH) |
| : | |
| MICHAEL LAUER, MIZUHO : | March 28, 2008 |
| CORPORATE BANK, LTD., : | |
| KFP INVESTORS PARTNERSHIP, : | |
| TOWN OF GREENWICH, CT, HEIDI : | |
| LAUER, and HANNAH HEMPSTEAD, : | |
|     Defendants : | |
| : | |
| MARTY STEINBERG, ESQ., : | |
| COURT-APPOINTED RECEIVER FOR : | |
| LANCER MANAGEMENT GROUP II, : | |
| LLC, LANCER OFFSHORE, INC., : | |
| OMNIFUND, LTD., LSPV, INC., LSPV, : | |
| LLC, ALPHA OMEGA GROUP, INC., : | |
| G.H. ASSOCIATES, LLC, CLR : | |
| ASSOCIATES, LLC and as : | |
| RESPONSIBLE PERSON FOR : | |
| LANCER PARTNERS, L.P., : | |
| : | |
|     Defendant-Intervenor : | |

## RULING RE: CROSS-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 44]; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 50]; INTERVENOR'S MOTION FOR ORDER [DOC. NO. 42]

This case revolves around a foreclosure action brought by the United States against defendant Michael Lauer ("M. Lauer"). The United States seeks to enforce a tax lien it has recorded on M. Lauer's home, and it has filed a motion for summary judgment to this effect. See Doc. No. 50. Mizuho Corporate Bank, Ltd. ("Mizuho"), which holds a superior lien on the property, also seeks summary judgment on its own

1

attempt to foreclose (asserted by way of cross-claim). See Doc. No. 44. Finally, the defendant-intervenor has filed a Motion seeking to affect the manner in which any foreclosure is carried out, and seeking to obtain any net proceeds from foreclosure. For the reasons that follow, the court **GRANTS** the United States's Motion for Summary Judgment, **GRANTS** Mizuho's Motion for Summary Judgment, and **GRANTS IN PART AND DENIES IN PART** defendant-intervenor's Motion.

I.    **BACKGROUND**[1]

In July 2003, the United States Securities & Exchange Commission ("SEC") filed a civil action against M. Lauer in the U.S. District Court for the Southern District of Florida ("Florida court"). The SEC alleged that M. Lauer had deliberately manipulated the closing price of various stocks, and it sought disgorgement of M. Lauer's allegedly ill-gotten gains. On July 10, 2003, the Florida court issued an ex parte temporary restraining order against M. Lauer, freezing all of his personal assets. The Florida court also issued an order appointing Marty Steinberg as the Receiver for various hedge fund-related companies that M. Lauer controlled. On July 17, 2003, the temporary

---

[1] To the extent that evidence in the record creates a factual dispute, the court discusses the evidence in the light most favorable to M. Lauer and H. Lauer, the two defendants who have opposed the summary judgment motions.
    The Lauers purport to rely in part on evidence that was submitted in an action pending in another federal district court, but that has not been submitted to this court. The court cannot consider that evidence as part of the record in this court. See Fed. R. Civ. P. 56(e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."); Loc. Civ. R. 56(a) (explaining that any evidence referred to in a Local Rule 56(a)(2) statement must be "filed and served with [that statement] in conformity with Fed. R. Civ. P. 56(e)").

2

restraining order was converted into a preliminary injunction that froze all of M. Lauer's assets while the SEC's litigation was pending.

At the time the asset freeze was ordered, M. Lauer was living at his home at 7 Dwight Lane, Greenwich, CT. Land records show that on April 30, 1999, M. Lauer executed two mortgages on the property with one of Mizuho's predecessor banks. Yasuda Aff. Exh. 2, 4. The mortgages were for $1,100,000 and $521,000, respectively, and were duly recorded on May 7, 1999. Id. Both mortgages obligate M. Lauer, inter alia, to make monthly payments to Mizuho on the first day of each month, to maintain property insurance on the residence, and to prevent any other liens from being recorded on the property. Id. The mortgages also contain an acceleration provision which allows Mizuho to require immediate repayment in full, and/or to seek foreclosure, if M. Lauer fails to keep any promise in the agreement. M. Lauer asserts that prior to the asset freeze in July 2003, he complied with all of his obligations under the mortgages. Doc. No. 79 at 2.

Before July 2003, however, M. Lauer's residence became subject to an IRS tax lien. This occurred because, on December 30, 2002, the IRS made assessments against M. Lauer based on deficiencies with his 2001 tax returns. At the time, the assessments were for $2,378,057.00 in deficient tax, a penalty of $107,012.56, and interest in the amount of $103,424.13. M. Lauer did not contest this assessment, and on February 7, 2003. the IRS filed a Notice of Federal Tax Lien with the Secretary of State in Hartford and with the Greenwich Town Clerk. M. Lauer subsequently made

3

several payments to the IRS pursuant to an installment agreement. However, the payments stopped after M. Lauer's assets became subject to the asset freeze.[2]

Because of the asset freeze, M. Lauer also lost access to the funds that he had been using to pay the mortgages. Defendant Heidi Lauer ("H. Lauer"), Lauer's then-fiancee and current wife,[3] began submitting mortgage payments on Lauer's behalf. Doc. No. 79 at 3-5. Mizuho accepted these payments for a while. Id. However, on March 22, 2005, Mizuho sent the Lauers a letter in which it indicated it would not accept any further payment from H. Lauer unless it received (1) a copy of a marriage certificate, and (2) confirmation from H. Lauer as to the source of the funds that she was using to make the payments. Yasuda Aff. Exh. 6, 7. The letter also stated that, even despite H. Lauer's most recent payment, M. Lauer was in default of his obligations for reasons unrelated to late payments, including because he had allowed the IRS to place a tax lien on the premises and because he had failed to maintain home insurance on the premises. The letter warned M. Lauer that unless he cured these defaults by April 18, 2005, Mizuho might exercise its right to accelerate the sums due under the mortgage and foreclose.

On April 20, 2005, H. Lauer forwarded a payment of $14,086.51 to Mizuho. Mizuho deemed this payment late, and it also refused to accept any further mortgage

---

[2] Because of subsequent penalties, as of April 23, 2007, the IRS calculated M. Lauer's unpaid balance as $2,901,347.90.

[3] At the time, her name was Heidi Carens.

payments from H. Lauer.[4]  Additionally, M. Lauer did not cause the IRS tax lien to be discharged, nor did he obtain property insurance.  Indeed, on April 6, 2005, April 7, 2005, April 13, 2006, October 6, 2006, and April 5, 2007, Mizuho made various payments to the insurance company to maintain property insurance on the premises.  These payments totaled $24,321.[5]  Yasuda Aff. at 5.

Ultimately, both the United States and Mizuho came to the conclusion that they wished to foreclose on the Dwight Lane residence.  In early 2006, both attempted to intervene in the Florida court action, and they sought to modify the asset freeze so that it would allow such foreclosure.  The Florida court permitted both parties to intervene, and it modified the asset freeze order "to permit Mizuho and the United States to foreclose upon [M. Lauer's residence]."  Yasuda Aff. Exh. 12 at 9.  The Florida court

---

[4] Mizuho contends that it refused to accept the payments because it feared that H. Lauer was funneling assets that actually belonged to M. Lauer, and that were subject to the asset freeze.  Yasuda Aff. at 5.

[5] M. Lauer also failed to pay property taxes to the Town of Greenwich in 2006 and 2007.  Mizuho had to make those payments, and it expended $40,220.37 to do so.  Yasuda Aff. at 5.

By affidavit from one of its Senior Vice Presidents, Mizuho asserts that, if M. Lauer was in fact in default on his mortgages as alleged, as of May 7, 2007 the amounts due to Mizuho were:  (1) for the first mortgage, the principal balance of $1,100,000, late fees of $2,502.34, and interest in the amount of $129,404.06; (2) for the second mortgage, the principal balance of $521,000, late fees of $1,785.18; and interest in the amount of $61,290.46; (3) for both mortgages combined, $24,321.00 in home owners insurance premiums, $40,220.31 in property tax payments, $1,365 in title insurance and property appraisal feels, and an unspecified amount for legal fees.  Id. at 6.  Mizuho also asserts that it would be entitled to additional interest and fees incurred after May 7, 2007.  Id.

M. Lauer has come forward with no evidence to contest these amounts.

5

noted that the modification was "granted with the understanding that the sale price of [Lauer's residence] be maximized, and that Mizuho is free to proceed by cross-claim or otherwise" in the foreclosure action. Id. The Florida court further noted that the asset freeze would remain in place as to any proceeds that remained after the mortgage and tax liens had been satisfied. Id.

On October 31, 2006, the United States filed the instant foreclosure action in this court. In an attempt to comply with 26 U.S.C. § 7403, the government named as defendants all entities and individuals that it then believed might claim an interest in the property: M. Lauer, Mizuho, KFP Investors Partnership ("KFP"), and the Town of Greenwich.[6] Mizuho then filed its Answer, and by way of counter-claim against the United States, and as a cross-claim against all other parties, Mizuho sought to foreclose on its mortgage.

Marty Steinberg, the Receiver from the Florida court action, subsequently filed a motion to intervene in this case, Doc. No. 31, which the court granted, Doc. No. 41. The Receiver then filed a Motion asking: (1) that any net sale proceeds from foreclosure be paid to the Receiver, and (2) that the IRS be required to list the property with the "Multiple Listing Service" as part of its foreclosure sale. Doc. No. 42. The IRS

---

[6] KFP and the Town of Greenwich have not done anything in this action to affirmatively assert any ownership interest in the property. KFP did file an Answer to the United States's Complaint, and it admitted the government's allegations that it "may claim" an interest in Lauer's residence. KFP has not filed an answer to Mizuho's cross-claim, and it has not subsequently participated in this litigation (aside from participating in status conferences). The Town of Greenwich never filed an appearance in this action.

and Mizuho opposed the second part of this Motion, preferring instead that the foreclosure sale be handled by an IRS Property And Liquidation Specialist (PALS). Doc. Nos. 51, 52. The IRS and Mizuho also filed motions for summary judgment on their respective claims.

After these motions were filed, two additional parties, H. Lauer and Hannah Hempstead, were added to the case as defendants and as cross-defendants.[7]

## II. THE SUMMARY JUDGMENT MOTIONS

Summary judgment is only appropriate when there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. Rivkin v. Century 21 Teran Realty LLC, 494 F.3d 99, 103 (2d Cir. 2007). However, a party may not rely simply on speculation or conjecture to defeat summary judgment; the party must actually introduce evidence that is sufficient to create a disputed issue of material fact. Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir.

---

[7] These two individuals had filed notices in the land records indicating that they claimed interests in the Dwight Lane residence, although they had not originally been named as defendants in the foreclosure action. Without objection, the court ordered the United States and Mizuho to add these two individuals as parties, which they did. See Doc. No. 83.

The United States and Mizuho had difficulty serving these defendants, however, and so the court ordered these defendants to appear under 28 U.S.C. § 1655, and authorized that they be served by publication. See Doc. Nos. 88, 92, 94, 96. H. Lauer subsequently appeared in this action and opposed summary judgment largely by relying on M. Lauer's arguments and filings. See Doc. No. 100 at 2. Hempstead has failed to appear as ordered, and she will thus be bound by the court's ruling despite her failure to appear. See 28 U.S.C. § 1655.

2000). The court will deal with the two Motions in turn.

   A.   The Tax Foreclosure

Once the IRS makes an assessment against a taxpayer, and gives that taxpayer notice and demand for payment, the IRS obtains a lien against a taxpayer. 26 U.S.C. §§ 6321, 6322. This lien automatically arises in all property owned by the taxpayer. United States v. Comparato, 22 F.3d 455, 457 (2d Cir. 1994). The IRS may then seek to enforce that lien in a foreclosure action in federal court. 26 U.S.C. § 7403(a). The relevant statute provides:

> The court shall . . .adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sales according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

Here, there is no dispute that the IRS made a valid assessment for the deficiency on M. Lauer's 2001 taxes, that the IRS gave M. Lauer notice and demand for payment, and that the IRS has a valid lien against the Dwight Lane residence. Accordingly, it appears that the IRS is entitled to a judgment of foreclosure in the amount owed. Based on the IRS's Form 1040 tax assessment, which is presumptively correct, see United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002), that amount is $2,901,347.90.

M. Lauer challenges foreclosure on equitable grounds, pointing out that he would

8

have been able to continue making his tax payments under the installment agreement were it not for the asset freeze.  See Doc. No. 67 at 6, 11-12.  It is true that a district court has a modicum of equitable discretion to avoid a forced sale under the tax statutes.  United States v. Rodgers, 461 U.S. 677, 709-710 (1983).  However, there are virtually no circumstances in which it will be appropriate to exercise that discretion on behalf of the delinquent taxpayer.  Id.  Here, the court declines to exercise its discretion on behalf of M. Lauer, for two reasons.  First, the asset freeze postdates the time when M. Lauer's 2001 taxes were due.  Accordingly, while the asset freeze might provide a justification for M. Lauer's failure to live up to installment agreement, it does not provide a justification for his initial failure to pay his taxes.  Second, although M. Lauer challenges the validity of the asset freeze, a court of competent jurisdiction has determined that there is evidence the frozen funds were obtained through a securities fraud perpetrated by M. Lauer.

M. Lauer and H. Lauer next argue that the court should exercise its equitable discretion because H. Lauer, and the couple's young children, live in the Dwight Lane residence.  Doc. No. 67 at 12; Doc. No. 100 at 2, 5.  Although the court is sympathetic, the court declines to exercise its equitable powers in this manner, as these are the kinds of hardships that are typical in foreclosure proceedings.  The court's equitable powers are particularly constrained here because H. Lauer and her children appear to

have no present ownership interest in the property.[8]  See Rodgers, 461 U.S. at 711.

M. Lauer also attempts to dispute the amount he owes the IRS, claiming that the IRS owes him a refund for tax year 2002.  M. Lauer 56(a) Statement at 2.  However, there is no evidence that M. Lauer has filed an administrative request for a refund, and thus he is procedurally barred from obtaining an offset of his liability in this court.  See 26 U.S.C. § 7422.

Finally, M. Lauer argues that foreclosure should be avoided because it is economically irrational for the IRS to foreclose on his residence.  See Doc. No. 67 at 6-10.  But whether or not it makes financial sense for the IRS to foreclose given its standing relative to other creditors, the IRS has a legal right to do so.

B.     Mizuho's Mortgage Foreclosure

There can be no dispute that Mizuho is also entitled to foreclose on the residence.  While H. Lauer and M. Lauer fault Mizuho for not accepting payments by proffered by H. Lauer, there is no dispute that M. Lauer failed to maintain property insurance on the premises, and that M. Lauer was in breach of the mortgage agreements when he allowed the IRS to obtain a lien in his property.  Under the

---

[8] H. Lauer does suggest that she has a security interest in the property.  After M. Lauer's assets were frozen, H. Lauer contends that she lent money to M. Lauer to continue making mortgage payments, and she suggests it was understood that the value of the Dwight Lane residence was a "part-collateral" for the loan.  Doc. No. 100 at 5.  If M. Lauer in fact made such a promise, however, then he did so in violation of the asset freeze, which prohibited him from, inter alia, "pledging" property he owned.  H. Lauer's security interest would thus appear to be void.  Indeed, since H. Lauer appears to have had actual notice of the asset freeze order, she herself may have been in violation of the court's Order.

10

mortgages, Mizuho was therefore entitled to accelerate the sums due and foreclose. See Yasuda Aff. Exh. 2 at Rider ¶ 33; id. at Rider ¶ 35; Yasuda Aff. Exh. 4 at Rider ¶ 33; id. at Rider ¶ 35.[9]

C.  Priority

Every party agrees that Mizuho's claim has priority over that of the United States. And other than Mizuho, no creditor has suggested that they have a claim that is superior to the federal tax lien. Indeed, other than the United States, Mizuho, and the Receiver, no party has come forward at all to present evidence that they have a valid ownership interest in the property, or that they have a valid lien on the property.

It does not matter that H. Lauer has filed a lis pendens because of her pending divorce action. H. Lauer has not yet obtained a judgment awarding her any interest in the property, and her claim is therefore still inchoate. See United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 89 (1963) (explaining that a lien is not perfected until the amount of the lienor's claim has been established).[10]

---

[9] M. Lauer argues that the doctrine of laches bars Mizuho from foreclosing based upon the tax lien, as the tax lien had existed for at least two years before Mizuho notified M. Lauer that he needed to dissolve the lien. Doc. No. 71 at 6-8. But M. Lauer makes no argument why the doctrine of laches would defeat Mizuho's claim based on the lack of insurance. Mizuho would therefore be entitled to a judgment of foreclosure irrespective of the validity of M. Lauer's laches argument.

[10] Nor has H. Lauer shown that she has a valid mortgage interest in the Dwight Lane premises. First, as discussed in footnote 8, H. Lauer's "mortgage" was obtained in violation of the Florida court's asset freeze. Second, there is no evidence that H. Lauer ever recorded her mortgage, and thus her interest in the property is enforceable against no one but M. Lauer. See Conn. Gen. Stat. § 47-10.

## III. THE RECEIVER'S MOTION

The Receiver's Motion has two parts. First, the Receiver wishes to be paid the net proceeds from any sale at the residence, after all liens have been satisfied. Second, the Receiver asks this court to direct the IRS to list the property on the Multiple Listing Service ("MLS").

No party has objected to the first part of the Receiver's motion, and the court grants it. When the Florida court modified the asset freeze in order to permit foreclosure, that court specifically directed that the net proceeds, if any, should be held in trust by the Receiver for allegedly defrauded investors.

Both the IRS and Mizuho have objected to the second part of the Receiver's Motion. The IRS and Mizuho believe that a better net sale price can be obtained if the property is liquidated through an IRS Property Appraisal and Liquidation Specialist (PALS), as this would permit the sale to proceed more quickly and inexpensively. Doc. No. 51 at 2-3; Doc. No. 52 at 3-8. The Receiver believes that using MLS will result in a higher sale price because it would increase the number of potential buyers interested in the property. Doc. No. 42 at 6-7. The Florida court did not express a preference between these two methods, and the relevant federal statute for tax foreclosures simply instructs this court to "decree a sale," 26 U.S.C. § 7403(c), without mention of the proper mechanism.

The court declines to require, at this stage, that the foreclosing parties use an MLS listing. The court will consider and determine the conditions of foreclosure in

connection with the Motion for Sale. The Receiver's Motion is therefore denied insofar as it seeks to require an MLS listing.

IV. **CONCLUSION**

Mizuho's Motion for Summary Judgment [Doc. No. 44] is **GRANTED**. The United State's Motion for Summary Judgment [Doc. No. 50] is **GRANTED**. The Receiver's Motion [Doc. No. 42] is **GRANTED IN PART AND DENIED IN PART**. Both the United States and Mizuho are entitled to judgments of foreclosure. The net proceeds of this foreclosure shall be paid first to Mizuho to satisfy M. Lauer's outstanding obligation on the mortgages, including related fees and interest, and next to the United States to satisfy its tax lien. Any remaining proceeds shall be paid to the Receiver to hold in trust.

By **APRIL 22, 2008**, unless the foreclosing parties request additional time for good cause, the foreclosing parties shall submit a Motion for Sale, following the state Practice Book procedures (as applicable). The court directs Mizuho and the United States to confer, and to attempt to agree on the foreclosure sale procedures. Any objections to the Motion are due **22 DAYS** after the date the Motion for Sale is filed.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 28th day of March, 2008.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge